UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PHYLLIS KENNEY,

    Plaintiff,

v.                                                    C.A. No. 09-cv-289-ML

BETHANY HOME OF RHODE ISLAND,
BOARD OF DIRECTORS OF BETHANY
HOME OF RHODE ISLAND and
MICHELLE GEREZ,

    Defendants.

## MEMORANDUM AND ORDER

In this case, Plaintiff alleges that Defendants violated her rights under The Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"), R.I. Gen. Laws § 28-48-1. Defendants have moved for summary judgment as to all claims. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

### I. Facts

Plaintiff, Phyllis Kenney ("Kenney"), worked for Defendant, Bethany Home of Rhode Island ("Bethany Home"),[1] as Director of Nursing for approximately 20 years. On September 6, 2007, Kenney's doctor informed her that she had elevated blood pressure. A few days later, on September 11, 2007, Kenney left work early because she was not feeling well. Pl.'s Opp'n Summ. J. 2, Docket

---

[1] For the sake of simplicity, Defendants are referred to collectively as Bethany Home.

1

No. 15. The next day, September 12, 2007, Kenney called Bethany Home and spoke to the receptionist, whom Kenney informed that she would be taking medical leave and that a fax would be sent from her doctor.

Kenney's doctor faxed a note to Bethany Home on September 12, 2007, indicating that Kenney would be out of work for six weeks and that she would be reevaluated at the end of that period. Two days after receiving the fax, on September 14, 2007, Bethany Home's Administrator, Michelle Gerez ("Gerez"), sent a letter ("Key Employee Letter") to Kenney notifying her that, under the FMLA, Kenney was a "key employee" and that, in order "to prevent substantial and grievous economic injury to the operations of the employer[,] . . . Bethany Home intends to deny you restoration of your employment at the conclusion of your FMLA leave." Key Employee Letter, Sept. 14, 2007, Docket No. 13-8.

Kenney's period of medical leave began September 12, 2007, and she took the full allotment of leave prescribed under both the FMLA and the RIPFMLA. Kenney never returned to work after her leave expired. She admits that she was medically unable to return to work at the end of her period of medical leave. The record establishes that Kenney was unable to return to work until July 1, 2008, well past the period of protected medical leave. Note from Doctor Arcand, June 17, 2008, Docket No. 13-21.

Kenney's complaint alleges that Bethany Home deprived her of rights secured under the FMLA and the RIPFMLA. Pl.'s Compl. ¶¶ 25-26.[2] The essence of her argument is that Bethany

---

[2]There is overlap between the elements of the federal and state law claims. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 158 n.1 (1st Cir. 1998). Both statutes prohibit interference and retaliation with regard to protected medical leave. RIPFMLA, however, does not contain a "key employee" exception. This causes a conflict between the statutes. Under the RIPFMLA, employees, regardless of whether they are "key employees," are entitled to job restoration upon the expiration of

2

Home interfered with her right to job restoration and terminated her for having taken medical leave. Kenney seeks declaratory and injunctive relief as well as attorney's fees, compensatory damages, and liquidated damages. Bethany Home moved for summary judgment, arguing that Kenney's inability to return to work upon the expiration of her medical leave forecloses her claims. As an initial matter, Bethany Home argues that Kenney's complaint alleges only an FMLA interference claim. Bethany Home then argues that Kenney cannot proceed on her interference claim because employees who are unable to return to work upon the expiration of their medical leave have no substantive right to job restoration. In addition, Bethany Home argues that, to the extent that Kenney has alleged a retaliation claim, that claim is also foreclosed by her inability to return to work.

Two preliminary issues present themselves to the Court: (1) whether Kenney has asserted an FMLA retaliation claim in addition to her interference claim; and (2) whether Kenney's inability to return to work forecloses those claims.

## II. Standard of Review

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineburg

---

their medical leave. In contrast, under the FMLA, employers can deny "key employees" job restoration in some circumstances. As such, an employer cannot make a "key employee" determination under the FMLA without potentially violating the RIPFMLA. This tension creates "conflict preemption" and "compliance with both state and federal law is impossible." Weaver Cove Energy, LLC v. Rhode Island Coastal, 589 F.3d 458, 472 (1st Cir. 2009). The RIPFMLA is therefore preempted to the extent that it conflicts with the FMLA's "key employee" provision. To the extent that RIPFMLA is not preempted, the elements of Kenney's RIPFMLA claims correspond to the elements of her FMLA claims and this Court addresses the statutes in tandem.

v. Bissonnette, 548 F.3d 50, 56 (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990)). "A fact is 'material' only if it 'possesses the capacity to sway the outcome of the litigation under the applicable law.'" Id. (quoting Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir.1997)). The Court will "assay the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party." Barr v. Galvin, 626 F.3d 99, 106 (1st Cir. 2010).

### III. Discussion

#### A. The Nature of Kenney's Claims

The FMLA divides causes of action into two distinct groups: interference claims and retaliation claims. See Hodgens v. General Dynmaics Corp, 144 F.3d 151,159-60 (1st Cir. 1998). Kenney's complaint states that Bethany Home "discriminated" against her and "violated [her] . . . statutory rights in violation of the FMLA."[3] Pl.'s Compl. ¶ 25. Under the FMLA, 29 U.S.C. § 2615(a)(1), employers are prohibited from interfering with an employee's substantive FMLA rights. Such claims are known as FMLA interference claims, and Bethany Home does not contest the fact that Kenney has alleged such a claim premised upon her substantive right to job restoration. See 29 U.S.C. § 2614(a)(1) (entitling any eligible employee who takes FMLA leave to be restored to their prior position or an equivalent position "on return from such leave").

In addition to protecting an employee's right to substantive FMLA entitlments, the statute also protects employees from being discriminated against for having exercised their substantive rights.

---

[3] As noted above, the analysis of the elements of the RIPFMLA and the FMLA claims is the same, and, to the extent the state statute is not preempted, the Court's review of the federal claims addresses the state statute as well.

See Hodgens, 144 F.3d at 159-60. Such claims are referred to as retaliation claims. The word "retaliation" itself does not appear in the statute; instead, in most jurisdictions, such statutory protection is culled from 29 U.S.C. § 2615(a)(1) and (2) and the attendant regulations. See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 331 & n.2 (1st Cir. 2005) (finding the regulations to unambiguously prohibit retaliation). Bethany Home argues that Kenney's complaint fails to allege an FMLA retaliation claim.

The FMLA prohibits employers from retaliating against employees who exercise their FMLA rights. See id. at 331. A retaliatory firing for having taken FMLA leave could form the basis for an FMLA retaliation claim. Kenney's complaint alleges that Bethany Home's actions constituted "wrongful termination" and that Bethany Home failed to establish the requisite "substantial and grievous economic injury" necessary in order to deny Kenney job restoration. Pl.'s Compl. ¶¶ 18-19. In addition, Kenney goes on to allege that Bethany Home was "motivated by malice" and that its purported reasons for the alleged termination were "pretextual." Pl.'s Compl. ¶¶ 20, 22.

Whether a claim is fairly characterized as "interference" or as "retaliation" "turn[s] on . . . the nature of the facts and the theory of the case." Colburn, 429 F.3d at 331. The question is "whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or her for having exercised or attempted to exercise those rights." Id. at 332. Kenney's complaint is a mixed bag.

In part, Kenney alleges that Bethany Home failed to "restor[e] [her] . . . to the same or similar position." Pl.'s Compl. ¶ 19. Fairly read, this allegation corresponds to an interference claim. At the same time, however, Kenney alleges "wrongful termination" and raises the issue of pretext. An employer's intent is only relevant as to FMLA retaliation claims. See Colburn, 429 F.3d at 332.

5

"[E]mployer motive plays no role in a claim for substantive denial of benefits." Id. Viewed in the light most favorable to Kenney, this Court concludes that her complaint alleges both a substantive denial of FMLA benefits as well as retaliation for having taken FMLA leave.

### B. Kenney's FMLA Interference Claim

#### i. Inability to Return to Work

The FMLA provides eligible employees with 12 weeks of unpaid leave during a 12-month period. 29 U.S.C. § 2612(a)(1). The RIPFMLA provides eligible employees with 13 weeks of unpaid leave in any two calendar years. R.I. Gen. Laws § 28-48-2. Employees who take medical leave "shall be entitled, on return from such leave . . . to be restored by the employer to the position of employment [or its equivalent]." 29 U.S.C. § 2614(a)(1)(A)-(B). Thus, as a general rule, job restoration/reinstatement is a substantive right with which employers may not interfere. See Colburn, 429 F.3d at 330.

Kenney's period of leave began September 12, 2007, and her right to FMLA and RIPFMLA protected medical leave expired in December 2007. Yet, Kenney was unable to return to work until July 2008. Because she took the full amount of leave, Kenney was never deprived of the substantive right to medical leave itself. At issue is whether Kenney can proceed on an interference claim premised upon her substantive right to job restoration. Bethany Home argues that Kenney was never entitled to job restoration because she was medically unable to return to work after her period of medical leave expired.

An FMLA plaintiff's inability to return to work forecloses an interference claim premised

6

upon job restoration. See Edgar v. JAC Products, Inc., 443 F.3d 501, 511-12 (6th Cir. 2006) (finding that the plaintiff's interference claim with regard to his right to restoration could not proceed where he was unable to return to work); Schumacher v. Fairfield Resorts Inc., 2008 WL 821569 at * 18 (D.R.I. March 27, 2008) (finding that an employer is not liable for violating an FMLA plaintiff's substantive FMLA rights where the plaintiff was unable to return to work); Barry v. Wing Mem'l Hosp., 142 F.Supp.2d 161, 165 (D.Mass. 2001) (finding that an "employee must be able to return to her prior position before she has a right to reinstatement."). An FMLA plaintiff cannot assert an interference claim based on the substantive right to job restoration when the plaintiff is unable to perform an essential function of the position. Colburn, 429 F.3d at 332. Under the FMLA, employees are entitled to job restoration "on return from such leave." 29 U.S.C. § 2614(a)(1). Accordingly, Kenney's inability to return to work is fatal to her interference claim.

Summary judgment is granted in favor of Bethany Home with regard to Kenney's FMLA interference claim because Kenney was unable to return to work upon the expiration of her medical leave.

ii. "Key Employee" Status[4]

The FMLA provides some limited exceptions to the general requirement that an employer must reinstate an employee upon the expiration of her medical leave. See Colburn, 429 F.3d at 330 (citing 29 C.F.R. § 825.216). One such exemption exists for highly compensated employees referred

---

[4] Kenney concedes that she qualifies as a "key employee."

to as "key employees."[5] 29 U.S.C. § 2614(b); 29 C.F.R. § 825.216(b). The statute provides that reinstatement is not required for "key employees" where:

> (A) such denial is necessary to prevent substantial and grievous economic injury to the operations of the employer;
> (B) the employer notifies the employee of the intent of the employer to deny restoration on such basis at the time the employer determines that such injury would occur; and
> (C) in any case in which the leave has commenced, the employee elects not to return to employment after receiving such notice.

29 U.S.C. § 2614(b).

Kenney argues that the inability to return to work is irrelevant in cases where a "key employee" is denied job restoration. She contends that she was denied substantive FMLA rights upon the receipt of her "key employee" notice, as opposed to upon the expiration of her medical leave. In essence, Kenney argues that "key employees" are potentially denied substantive FMLA rights at an earlier point in time than regular employees and that, accordingly, a "key employee's" inability to return to work upon the expiration of their medical leave is immaterial. The ability to return to work, however, remains relevant in cases involving "key employees."

The FMLA and its regulations require that a "key employee" be given the opportunity to "elect" to return to work after they receive notice of their "key employee" status. 29 U.S.C. § 2614(b)(1)(C); 29 C.F.R. §825.219(b). In addition, the regulations provide that a "key employee" who has not initially elected to return to work "is still entitled to request reinstatement at the end of the leave period [and] . . . [t]he employer must then again determine whether there will be substantial

---

[5] "A 'key employee' is a salaried FMLA-eligible employee who is among the highest paid 10 percent of all the employees employed by the employer within 75 miles of the employee's worksite." 29 C.F.R. § 825.217(a).

8

and grievous economic injury." 29 C.F.R. § 825.219(d). These statutory and regulatory provisions make clear that a "key employee's" ability to work is relevant both at the time of the "key employee" notice and upon the expiration of medical leave. Regardless of Kenney's "key employee" status, her substantive right to job restoration did not materialize because she was unable to return to work. Even assuming that the notice of her "key employee" status was deficient and that it was in fact a letter of termination, Bethany Home did not interfere with Kenney's substantive right to job restoration because Kenney never qualified for job restoration.

Kenney's "key employee" status does not alter the Court's grant of summary judgment in favor of Bethany Home on this claim.

### iii. Exacerbation Theory

There is evidence in the record to suggest that Bethany Home's Key Employee Letter either exacerbated Kenney's original injury or caused her a new injury such that Kenney's initial need for medical leave was compounded by depression she suffered as a result of her interpreting the Key Employee Letter as being a termination notice. Letter to Andrew Davis, September 11, 2008, Docket No. 13-22. The cause of Kenney's injury, however, does not affect her FMLA rights or alter the analysis. The fact that an employee's injury is either caused or exacerbated by the employer does not alter the analytical framework for FMLA claims. See Edgar, 443 F.3d at 516. "The FMLA . . . does not address the cause of an employee's injury. Instead, the FMLA entitles an employee to take a medical leave of absence and addresses an employee's rights upon return from leave." Barry, 142 F.Supp.2d at 166. For purposes of her FMLA interference claim, the cause of Kenney's injury is irrelevant because the focus of the inquiry is whether she has shown, by a preponderance of evidence,

that she was entitled to a substantive FMLA benefit that was denied. See Colburn, 429 F.3d 331.

Regardless of the cause of her injury, Kenney's inability to return to work forecloses her FMLA interference claim and summary judgment remains appropriate.

### C. Kenney's FMLA Retaliation Claim

#### i. Inability to Return to Work

Bethany Home argues for summary judgment on the basis that Kenney's inability to return to work upon the expiration of her medical leave bars her FMLA retaliation claim in the same manner that it defeats her FMLA interference claim. Kenney's retaliation claims must be reviewed separately, however, because "the failure of a substantive claim . . . does not foreclose a retaliation claim." Colburn, 429 F.3d at 333. "[A]n FMLA plaintiff may pursue a retaliation claim even if there is no claim of violation of substantive rights to leave." Id. "In some situations, a successful retaliation claim will lead to independent damages." Id. at 334.

Whereas the right to job restoration on an FMLA interference claim will not trigger unless an FMLA plaintiff returns from leave, a retaliation claim alleging wrongful termination has no such prerequisite. See id. at 333 (rejecting the defendant's theory that the plaintiff's inability to return to work ipso facto defeated his retaliation claim). An "employee cannot be discharged for exercising a right provided by the statute." Nagle v. Acton-Boxborough Reg'l Sch. Dist., 576 F.3d 1, 3 (1st Cir. 2009). "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c); see also Hodgens, 144 F.3d at 160. While an employer may terminate an employee who is out on medical

leave for lawful reasons, "retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights. Edgar, 443 F.3d at 508.

For her retaliation claim, Kenney's ability or inability to return to work and Bethany Home's knowledge or lack of knowledge as to such ability may be relevant with regard to Bethany Home's intent and the issue of pretext. Kenney's inability to work, however, does not foreclose her retaliation claim as a preliminary matter.

### ii. Elements of an FMLA Retaliation Claim

An employee establishes a prima facie claim of FMLA retaliation when she shows that: "1) [she] . . . availed herself of a protected right under the FMLA; 2) [she] . . . was adversely affected by an employment decision; and 3) there was a causal connection between the protected conduct and the adverse employment action." Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 113-14 (1st Cir. 2006). An adverse employment action results when an employer " (1) take[s] something of consequence from the employee . . . or (2) withhold[s] from the employee an accouterment of the employment relationship." Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996) (determining an adverse employment action in a Title VII context).

Where direct evidence of retaliation is lacking, FMLA plaintiffs may proceed under the inferential model established in McDonnell-Douglas. Colburn, 429 F.3d at 335. Under this model, an employee has the initial burden of establishing a prima facie case of retaliation. Id. at 336. The burden then shifts to the employer to articulate a legitimate non-retaliatory reason for its employment action. Id. If the employer creates a genuine issue of fact, then the burden returns to the plaintiff to show that the employer's stated reason was a pretext for retaliation. Id.

Kenney alleges that Bethany Home wrongfully terminated her when it sent her the Key Employee Letter. Pl.'s Compl. ¶ 18. The letter states, without qualification, that "Bethany Home intends to deny you restoration of your employment at the conclusion of your FMLA leave." Key Employee Letter. In further support of her wrongful termination claim, Kenney alleges that Bethany Home did not make a good faith determination as to whether restoring her to her prior position would cause Bethany Home substantial and grievous economic harm. Pl's. Compl. ¶ 19.

Kenney has made the necessary prima facie showing. The FMLA regulations state that employers must provide "key employees" "a reasonable time in which to return to work." 29 C.F.R. § 825.219(b). The Key Employee Letter failed to apprise Kenney of any such opportunity, and Bethany Home made no efforts to communicate this option to Kenney after it sent the letter. In addition, employers may only deny "key employees" job restoration where "substantial and grievous economic injury to the operations of the employer" will result. 29 U.S.C. § 2614(b)(1)(A). An employer must provide evidence of something akin to a threat to "the economic viability of the firm," or, in lesser circumstances, "substantial, long-term economic injury." 29 C.F.R. § 825.218(c). In this case, Bethany Home did not calculate or quantify the extent of its economic injury. Instead, it concluded that it was unable to hire a temporary replacement for Kenney because doing so would interfere with generalized "changes" being made. Gerez Dep. 117:6-25. The close temporal proximity between the alleged termination and Kenney's FMLA leave, in combination with the alleged deficiencies in the Key Employee Letter, support a prima facie showing of retaliation. Accordingly, the burden shifts to Bethany Home to articulate a legitimate reason for the alleged adverse employment action.

Bethany Home argues that the Key Employee Letter was clearly not intended to be a letter of termination because Bethany Home "requested, and received from Ms. Kenney's physician, updates

concerning Ms. Kenney's medical status and anticipated return to work date on a periodic basis after September 15, 2007." Def.'s Mot. Summ. J. 13. Yet, Bethany Home did not communicate directly with Kenney, and the Key Employee Letter was silent as to both Kenney's right to elect to return to work in lieu of taking leave and her right to request job restoration upon the expiration of her leave. Bethany Home also defends the economic determination referenced in the Key Employee Letter. Bethany Home argues that its analysis was rooted in its interpretation of a Rhode Island Department of Health Regulation. Bethany Home read the regulation as requiring a full-time Nursing Director at all times. Regardless of whether such a reading was reasonable, after basing its finding of "substantial and grievous economic injury" on its alleged inability to hire a temporary replacement, Bethany Home hired, at the same rate of pay as Kenney, an "interim" Director of Nursing for the period of time encompassing the duration of Kenney's medical leave. Gerez Dep. 52:13 – 53:4, 116:5-20.

Even construing Bethany Home's non-retaliatory justifications as legitimate, the conflicting statements in the record and the ambiguous Key Employee Letter are sufficient for Kenney to meet her burden of demonstrating pretext. On these facts, it is possible for a "fair-minded jury" to conclude that Bethany Home took adverse employment action against Kenney in retaliation for her having taken FMLA medical leave. See Hodgens, 144 F.3d at 169.

Genuine issues of material fact remain as to whether Kenney was in fact terminated and whether such termination was indeed motivated by retaliatory animus. Bethany Home's motion for summary judgment is denied on this claim.

## IV. Conclusion

For the reasons articulated above, Bethany Home's motion for summary judgment is GRANTED as to Kenney's interference claims. Bethany Home's motion for summary judgment is DENIED with regard to Kenney's retaliation claims.

SO ORDERED

*/Mary M. Lisi/*
Mary M. Lisi
United States District Judge
May 9, 2011